UNITED STATES of America,
Plaintiff–Appellee,

v.

John SHERMAN, Defendant–Appellant.

No. 89–3438.

United States Court of Appeals,
Seventh Circuit.

Argued June 12, 1990.

Decided Aug. 30, 1990.

Ronald S. Safer, Barry R. Elden, Asst. U.S. Atty., Office of the U.S. Atty., Criminal Receiving, Appellate Div., Chicago, Ill., for U.S.

Jeffrey B. Steinback, Geena D. Cohen, Genson, Steinback & Gillespie, Chicago, Ill., Neal Walter, Morton Grove, Ill., for John Sherman.

Before POSNER, EASTERBROOK, and MANION, Circuit Judges.

MANION, Circuit Judge.

John Sherman appeals his commitment to the custody of the Attorney General pursuant to 18 U.S.C. § 4241(d), after being held incompetent to stand trial on criminal charges. 722 F.Supp. 504. We affirm.

## I. Background

Sherman was indicted January 13, 1988 for attempted bank fraud and conspiracy in violation of 18 U.S.C. §§ 371 and 1344. One week later a magistrate ordered Sherman to undergo a mental competency exam. Following the examination, on June 3, 1988, the district court found Sherman incompetent to stand trial. The government asked that Sherman be committed to the custody of the Attorney General for hospitalization and treatment pursuant to 18 U.S.C. § 4241(d), but instead the court at the suggestion of Sherman's counsel ordered Sherman to continue his outpatient therapy for 120 days. The court heard no testimony because the government agreed Sherman was incompetent to stand trial. At the close of 120 days the parties were to return for a status conference so the court could reevaluate Sherman's condition. That 120-day period was extended on two

occasions so experts could complete reports on Sherman's mental condition. In the interim this court decided *United States v. Shawar*, 865 F.2d 856 (7th Cir.1989), which held that courts by statute must commit incompetent defendants to the custody of the Attorney General for up to four months. In response to *Shawar* the government asked for a second hearing, and Sherman again was found incompetent. The district court committed Sherman to the custody of the Attorney General for 120 days. The district court granted Sherman's motion for a stay of execution pending the outcome of this appeal, and Sherman continues to receive outpatient psychiatric treatment.

## II. Analysis

Sherman presents three arguments on appeal. He first contends the government was collaterally estopped from moving for a second custody hearing because the issue of competency was settled by the first hearing, and Sherman already had complied with the court's order to receive outpatient treatment. Second, Sherman argues the second hearing was not required by 18 U.S.C. § 4241 or by *Shawar* and violated his due process rights. Third, he contends that requiring him to be treated and examined for 120 days in a government hospital violates his Eighth Amendment right to be free from cruel and unusual punishment. We will examine each issue in turn, beginning with Sherman's collateral estoppel argument.

■ Sherman does not challenge our conclusion in *Shawar* that 18 U.S.C. § 4241(d)[1] compels the district court to

1. **"(d) Determination and disposition.**—If, after [a mental competency hearing], the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the court shall commit the defendant to the custody of the Attorney General. The Attorney General shall hospitalize the defendant for treatment in a suitable facility—

(1) for such a reasonable period of time, not to exceed four months, as is necessary to deter-

mine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the trial to proceed; and

(2) for an additional reasonable period of time until—

(A) his mental condition is so improved that trial may proceed, if the court finds that there is a substantial probability that within such additional period of time he will attain the capacity to permit the trial to proceed; or

(B) the pending charges against him are disposed of according to law; whichever is earlier.

commit incompetent defendants to the custody of the Attorney General. In *Shawar* we held that "[t]he plain meaning of [18 U.S.C. § 4241(d) ] is ... that once a defendant is found incompetent to stand trial, a district judge has no discretion in whether or not to commit him." 865 F.2d at 860. Sherman's contention seems to be that the government was precluded from raising and the district court from revisiting the issue after he completed the district court's order requiring continued outpatient treatment.

■ Collateral estoppel, commonly known as issue preclusion, is "a judicially-created doctrine that is properly applied when an issue raised by a party to a suit has been actually and necessarily litigated *in a prior suit* and when the party against whom estoppel is asserted has had a 'full and fair opportunity' to litigate the issue." *Teamsters Local 282 Pension Trust Fund v. Angelos,* 815 F.2d 452, 456 n. 3 (7th Cir.1987) (citations omitted) (emphasis added). The four requirements of collateral estoppel are that: (1) the issue sought to be precluded is the same as that involved in the prior action; (2) the issue was actually litigated; (3) the determination of the issue was essential to the final judgment; and (4) the party against whom estoppel is invoked was fully represented in the prior action. *Klingman v. Levinson,* 831 F.2d 1292, 1295 (7th Cir.1987). Sherman points out that collateral estoppel can apply in criminal cases. *See Ashe v. Swenson,* 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970).

■ Sherman's reliance on collateral estoppel fails for many reasons. In the first place, none of the issue preclusion cases cited by Sherman involve separate rulings in the same proceeding, as this case does. Sherman misapprehends the circumstances under which this doctrine can apply; collateral estoppel requires separate actions. *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979) (emphasis added) ("Under collateral estop-

pel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive *in subsequent suits based on a different cause of action* involving a party to the prior litigation.") Or as the Supreme Court put it in *Ashe v. Swenson,* "when a[n] issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties *in any future lawsuit.*" 397 U.S. at 443, 90 S.Ct. at 1194 (emphasis added). A case in point is *Ashe:* the defendant was tried and acquitted for the robbery of a participant in a poker game. Six weeks later he was tried, and this time convicted, for the robbery of another of the game's participants. The court held that the issue of whether the defendant robbed the poker game's participants had been settled by the first judgment of acquittal.

■ Similarly, Sherman cites other estoppel cases that involve issues previously litigated in different actions, and frequently in different courts. *See e.g. Miller Brewing Co. v. Jos. Schlitz Brewing Co.,* 605 F.2d 990 (7th Cir.1979); *Interconnect Planning Corp. v. Feil,* 774 F.2d 1132 (Fed.Cir.1985). By contrast, this case involves a temporary ruling by the district court following a criminal indictment. The ruling contemplated further proceedings related to the issue of Sherman's competency. Indeed, the issue of Sherman's competency can hardly be considered final when the very objective of competency determinations is to discover whether or when a defendant will be competent to stand trial. Although a judgment need not be final for purposes of 28 U.S.C. § 1291 to be given preclusive effect, it must be "immune, as a practical matter, to reversal or amendment." *Miller Brewing Co.,* 605 F.2d at 996.

> Whether a judgment, not "final" in the sense of 28 U.S.C. § 1291, ought nevertheless be considered "final" in the sense of precluding further litigation of the same issue, turns upon such factors as

If, at the end of the time period specified, it is determined that the defendant's mental condition has not so improved as to permit the trial

to proceed, the defendant is subject to the provisions of section 4246."

the nature of the decision (*i.e., that it was not avowedly tentative* ), the adequacy of the hearing, and the opportunity for review.

*Zdanok v. Glidden Co.,* 327 F.2d 944, 955 (2d Cir.1964) (emphasis added). By requiring Sherman to return for further consideration of the issue of competency, the district court made clear that its decision was "tentative," and susceptible to "reversal or amendment." Thus the decision was not barred by collateral estoppel.

Although the district court erred by not committing Sherman to the custody of the Attorney General after the first competency hearing as required by 18 U.S.C. § 4241, its mistake came at the urging of Sherman's counsel. After inducing the district court to commit a legal mistake, Sherman invoked estoppel to avoid proper application of the statute. Not only is this tactic highly questionable, even if unintentional, but the Supreme Court recently noted that it has never sanctioned invocation of equitable estoppel against the government to prevent application of a statute. *See Office of Personnel Management v. Richmond,* — U.S. —, 110 S.Ct. 2465, 2469–70, 110 L.Ed.2d 387 (1990). We decline to apply it here as well.

 Sherman's due process and cruel and unusual punishment arguments are similarly unpersuasive. Sherman contends that retroactive application of the *Shawar* decision violated his constitutional right to due process of law, in the same way retroactive application of new laws violates the ex post facto clause of the Constitution. This may be available if the commitment "adversely affect[ed] [Sherman's] reasonable expectations," *Cheshire Hospital v. New Hampshire–Vermont Hospitalization Service, Inc.,* 689 F.2d 1112, 1121 (1st Cir.1982), in a "particularly harsh and oppressive" manner. *U.S. Trust Co. of*

*New York v. New Jersey,* 431 U.S. 1, 17 n. 13, 97 S.Ct. 1505, 1515 n. 13, 52 L.Ed.2d 92 (1977). He argues that tacking on the commitment period of 120 days after the court-ordered psychiatric treatment of 120 days amounts to double punishment.[2] But Sherman sought to continue the much less confining outpatient psychiatric treatment; he admits that he continues that treatment to this day. Further, Sherman knew by the tentative nature of the court's order that the issue was not closed. His reasonable expectations could not have been upset by the court's order to correctly apply the statute.

To support his Eighth Amendment claim, Sherman points to testimony of a treating psychiatrist that confinement to a federal hospital for treatment might "possibly" do him substantial harm. However, on cross-examination this same doctor admitted that he was not familiar with federal medical facilities, and that it was "hard to predict" what would happen to Sherman. Even if it were likely that Sherman would regress if temporarily committed to a federal institution, there is no precedent for holding that such confinement constitutes "cruel and unusual punishment." The confinement is for the purpose of treatment and medical evaluation, not punishment. Every Eighth Amendment case cited by Sherman involves punishment for a defendant convicted of a crime; we are not inclined to break new constitutional ground here.

The district court's order committing Sherman to the custody of the Attorney General for hospitalization "in a suitable facility" for a period of 120 days pursuant to 18 U.S.C. § 4241 is

A<small>FFIRMED</small>.

---

**2.** We should point out that 18 U.S.C. § 4241 does not require commitment for a period of 120 days; once a patient is in custody of the Attorney General the statute requires hospitalization for treatment in a suitable facility only *"for such a reasonable period of time, not to exceed four months,* as is necessary . . ." to determine competency. 18 U.S.C. § 4241(d)(1)

(emphasis added). Aside from the fact that Sherman was never committed to the custody of the Attorney General, Sherman's counsel admitted at oral argument *that* she did not argue to the district court that "a reasonable period of time" under the facts of this case might be substantially fewer than four months of hospitalization.