**VARDON GOLF COMPANY, INC.,**
**Plaintiff–Appellant,**

v.

**KARSTEN MANUFACTURING CORPORATION, Defendants–Cross Appellant.**

**Nos. 01–1557, 01–1651.**

United States Court of Appeals,
Federal Circuit.

June 21, 2002.

Michael P. Mazza, Niro, Scacone, Haller & Niro, of Chicago, IL, argued for plaintiff-appellant. With him on the brief was Keith A. Vogt.

Lawrence G. Kurland, Bryan Cave LLP, of New York, NY, argued for defendant-cross appellant. With him on the brief were Thomas C. Walsh, David A. Roodman, Roxana Wizorek, and K. Lee Marshall, of Bryan Cave LLP, of St. Louis, MO; and Troy B. Froderman, Bryan Cave LLP, of Phoenix, AZ.

Before NEWMAN, DYK, and PROST, Circuit Judges.

PROST, Circuit Judge.

Vardon Golf Company, Inc. ("Vardon") appeals from the final decision of the United States District Court for the Northern District of Illinois, denying Vardon's motion to amend its complaint against Karsten Manufacturing Corporation ("Karsten") and dismissing Vardon's suit in its entirety. *Vardon Golf Co. v. Karsten Mfg. Corp.*, No. 00 C 7221, slip op. at 1 (N.D.Ill. May 9, 2001). The court held that a grant of partial summary judgment that Karsten did not infringe claims 12 and 15 of Vardon's U.S. Patent No. 5,301,941 ("the '941 patent") in a prior case, *Vardon Golf Co., Inc. v. Karsten Mfg. Corp.*, No. 99 C 2785, slip op. at 1 (N.D.Ill. Sept. 7, 2000) ("*Vardon I* "), collaterally estopped Vardon from bringing a new action against Karsten based on certain claims of Vardon's reissue patent, U.S. Patent No. Re. 36,950 ("the '950 patent"). *Vardon Golf Co. v. Karsten Mfg. Corp.*, No. 00 C 7221, slip op. at 5 (N.D.Ill. May 9, 2001) ("*Vardon II* "). Karsten cross-appeals, arguing that the court abused its discretion when it declined to sanction Vardon for bad faith litigation. *Vardon Golf Co., Inc. v. Karsten Mfg. Corp.*, No. 00 C 7221, slip op. at 5, 2001 WL 1117391 (N.D.Ill. Sept.20, 2001) ("*Vardon II Sanctions* "). We hold that the grant of partial summary judgment in *Vardon I* was not final for purposes of collateral estoppel and that the court therefore erred in according it preclusive effect in *Vardon II*. We reverse the court's dismissal of both Vardon's complaint and its motion to amend, and remand for further proceedings consistent with this opinion. We affirm the court's refusal to impose sanctions.

## BACKGROUND

Vardon and Karsten manufacture golf clubs. *Vardon I* at 1. In 1999, Vardon brought suit against Karsten alleging that Karsten's TiSI woods infringed claims 12 and 15 of Vardon's '941 patent and that Karsten's ISI iron-type clubs infringed several claims of Vardon's U.S. Patent No. 5,401,021 ("the '021 patent"). *Id.* at 1. Claims 12 and 15 of the '941 patent both contain the limitation "substantially uniform thickness." *Id.* at 15–16. On September 7, 2000, the district court construed this limitation and held that as a matter of law, Karsten's clubs did not infringe claims 12 and 15 either literally or under the doctrine of equivalents. *Id.* at 17–19. The court consequently granted summary judgment in Karsten's favor on the '941 patent. *Id.* It denied, however, Karsten's motion for summary judgment on certain of the '021 claims. *Id.* Thus, *Vardon I* is still before the court awaiting trial on the '021 patent. That case is not before us on appeal.

Prior to bringing suit against Karsten, Vardon had filed a reissue application for the '941 patent. While that application was pending, but before the court's decision in *Vardon I,* Vardon filed a motion to substitute the reissue patent for the '941 patent in the ongoing litigation. The court denied the motion. Two months after the court granted partial summary judgment in Karsten's favor, the '950 reissue patent issued. In order to obtain the reissue, Vardon surrendered the parent patent, thereby mooting *Vardon I's* summary judgment on the '941 claims and extinguishing Vardon's right to appeal the court's claim construction and finding of noninfringement regarding that patent. Vardon subsequently filed a second action against Karsten on November 15, 2000. *Vardon II* at 2. Like *Vardon I, Vardon II* was brought in the Northern District of Illinois, although the two suits were heard by different district judges.

In *Vardon II,* Vardon alleged that Karsten infringed claim 22 of the '950 reissue patent. *Id.* Unlike claims 12 and 15 of the '941 patent, claim 22 of the '950 reissue did not contain the "substantially uniform thickness" limitation that the court had previously construed in *Vardon I. Id.* After Karsten answered, however, Vardon sought to amend its complaint to include allegations that Karsten's product infringed claims 12 through 21 of the '950 patent, all of which contain the "substantially uniform thickness" limitation. *Id.* at 2–3. Karsten challenged this motion, arguing that Vardon was collaterally estopped from raising claims that included a limitation that Karsten's clubs had already been found not to possess. *Id.* at 3.

The court agreed with Karsten and denied Vardon's motion. *Id.* at 5. The court held that Vardon had failed to take advantage of available means of preserving its right to appeal in connection with the *Vardon I* litigation, and that Vardon was therefore estopped from rearguing the *Vardon I* issues. *Id.* When Vardon later informed the court that the Patent and Trademark Office ("PTO") had made a mistake printing claim 22 and that, like claims 12 through 21, it too should have contained the "substantially uniform thickness" language, the court dismissed Vardon's entire complaint on the basis of collateral estoppel. *Id.* at 1. The court denied Karsten's motion for sanctions, however, concluding that Karsten had failed to introduce sufficient evidence to support a finding of bad faith litigation on Vardon's part. *Vardon II Sanctions* at 5.

Vardon subsequently filed another motion with the *Vardon I* court to substitute the '950 patent into its grant of partial summary judgment. This motion was denied. Vardon appealed the *Vardon II* de-

cision to this court, and we have jurisdiction pursuant to 35 U.S.C. § 1295(a)(1).

## DISCUSSION

■ "Because the application of collateral estoppel is not a matter within the exclusive jurisdiction of this court, this court applies the law of the circuit in which the district court sits." *Bayer AG. v. Biovail Corp.*, 279 F.3d 1340, 1345, 61 USPQ2d 1675, 1679 (Fed.Cir.2002) (citing *Pharmacia & Upjohn Co. v. Mylan Pharms., Inc.*, 170 F.3d 1373, 1381 n. 4, 50 USPQ2d 1033, 1040 n. 4 (Fed.Cir.1999)). Under Seventh Circuit law, collateral estoppel, or issue preclusion, prevents a party from litigating an issue if: (1) the issue sought to be precluded is the same as that involved in an earlier action; (2) the issue was actually litigated; (3) determination of the issue was essential to a final judgment; and (4) the party against whom estoppel is invoked was represented in the prior action. · *See Adair v. Sherman*, 230 F.3d 890, 893 (7th Cir.2000); *Chicago Truck Drivers, Helpers & Warehouse Union (Indep.) Pension Fund v. Century Motor Freight, Inc.*, 125 F.3d 526, 530 (7th Cir.1997); *Havoco of Am., Ltd. v. Freeman, Atkins & Coleman, Ltd.*, 58 F.3d 303, 307 (7th Cir. 1995).

### A.

On appeal, Vardon argues that the *Vardon II* court erred when it accorded *Vardon I* preclusive effect because that decision was neither final nor appealable. According to Vardon, a nonfinal, unappealable judgment does not become preclusive simply because a party theoretically could have preserved its right to appeal by pursuing certain procedural avenues. In response, Karsten concedes

that *Vardon I's* grant of partial summary judgment was not sufficiently final to be appealed. It argues, however, that the decision should be accorded preclusive effect because Vardon voluntarily relinquished its right to appeal. In short, Karsten asserts that because Vardon did not take procedural steps to preserve its appeal from *Vardon I's* partial summary judgment, that judgment now precludes Vardon from litigating the matter anew. In making this argument, Karsten relies heavily on the Seventh Circuit's statement in *Williams v. Commissioner of Internal Revenue*, 1 F.3d 502, 504 (7th Cir. 1993) that application of collateral estoppel "might be extended to certain cases of summary judgment and even of partial summary judgment." [1]

■ We agree with Vardon that *Vardon I's* grant of partial summary judgment was not final for purposes of collateral estoppel and that the *Vardon II* court therefore erred when it accorded the decision preclusive effect. In *Miller Brewing Co. v. Jos. Schlitz Brewing Co.*, 605 F.2d 990 (7th Cir.1979), the Seventh Circuit set forth the requirements for finality under the doctrine of collateral estoppel. The court held that in order "[t]o be 'final' for purposes of collateral estoppel the decision need only be immune, as a practical matter, to reversal or amendment." *Id.* at 996. According to the court, the possibility of appeal contributes directly to this determination of finality, which "turns upon such factors as the nature of the decision (i.e., that it was not avowedly tentative), the adequacy of the hearing, *and the opportunity for review*." *Id.* (emphasis added) (citing *Lummus Co. v. Commonwealth Oil Refining Co.*, 297 F.2d 80,

---

1. Karsten also argues that the issue of finality is not properly before the court because Vardon failed to raise it in its opening brief. This statement is not accurate. In its brief, Vardon asserts that *Vardon I* lacks preclusive effect because it is not final, and Karsten's argument is consequently without merit.

89 (2d Cir.1961)). In so holding, the Seventh Circuit explicitly adopted the approach followed by the Restatement (Second) of Judgments, § 41 reporter's note comment g (Tent. Draft No. 1, 1973), now § 13 reporter's note comment g (1982), which states that the fact "that the decision was subject to appeal or was in fact reviewed on appeal [is a] facto[r] supporting the conclusion that the decision is final for the purpose of preclusion." *Id.See also United States v. Sherman,* 912 F.2d 907, 909–10 (7th Cir.1990); *Gilldorn Sav. Ass'n v. Commerce Sav. Ass'n,* 804 F.2d 390, 393 (7th Cir.1986); *accord Interconnect Planning Corp. v. Feil,* 774 F.2d 1132, 1135, 227 USPQ 543, 545 (Fed.Cir.1985) ("Sufficient firmness, according to the Restatement, requires that the party against whom the estoppel is asserted have had the right, even if not exercised, to challenge on appeal the correctness of the earlier decision.").

In the instant case, *Vardon I's* grant of summary judgment clearly was not "immune ... to reversal or amendment." Neither party moved to certify the court's interlocutory decision as final under Rule 54(b), and consequently that decision was "subject to revision at any time before the entry of judgment adjudicating all the claims," namely resolution of the remaining '021 patent allegations. Fed. R. Civ. Pro. 54(b). Moreover, Vardon never had the opportunity to appeal *Vardon I's* construction of the "substantially uniform thickness" limitation or its finding that Karsten's product did not contain this element of the '941 patent either literally or under the doctrine of equivalents. Indeed, Karsten concedes that *Vardon I's* partial summary judgment was not an appealable final judgment under 28 U.S.C. § 1291, and it is undisputed that this decision was rendered moot, and therefore unappealable, when Vardon surrendered the '941 patent. Under these circumstances, *Vardon I* cannot be said to be "final" for

collateral estoppel purposes as that term is defined either by the Seventh Circuit or the Restatement.

Karsten urges this court to find otherwise, however, on the ground that Vardon could theoretically have preserved its right to appeal by availing itself of certain procedural means. According to Karsten, *Vardon I* should be deemed final and therefore preclusive because Vardon could have avoided mooting the court's grant of partial summary judgment by: (1) moving the *Vardon I* court to certify its decision for interlocutory appeal under Rule 54(b), (2) substituting the '950 reissue patent for the '941 patent at an appropriate time, or (3) suspending its reissuance proceedings before the PTO. This argument is without merit. As a preliminary matter, it is not at all certain that the *Vardon I* court would have granted a Rule 54(b) certification motion. Nor is it clear that the court would have allowed Vardon to substitute the '950 reissue patent into the litigation, particularly in light of its denial of Vardon's motions to substitute. The existence of such speculative methods of preserving the right to appeal does not render a nonfinal judgment preclusive for the purposes of collateral estoppel. *Accord Interconnect Planning Corp.,* 774 F.2d at 1136, 227 USPQ at 545 (Fed.Cir.1985) (the possibility of interlocutory appeal does not render a decision final under the doctrine of collateral estoppel because "[t]he law of collateral estoppel is not intended to penalize a party for declining to try to take a piecemeal appeal.").

Finally, we find Karsten's reliance on *Williams* unconvincing. Although the *Williams* court observed that "a judgment final in the trial court may have collateral estoppel effect even though the loser has not exhausted his appellate remedies," and noted that "it has been suggested that this rule might be extended to certain cases of

summary judgment and even of partial summary judgment," the court held that the appellant's collateral estoppel argument was "frivolous." 1 F.3d at 504. As such, its statements about the possible scope of collateral estoppel are dicta. At oral argument, Karsten's counsel could not definitively direct the court to any case that has given collateral estoppel effect to a nonfinal judgment. We decline to do so today.

### B.

Vardon also argues that *Vardon I's* construction of the claim limitation "substantially uniform thickness" is patently incorrect and urges this court to construe the term *de novo*. Karsten responds that *Vardon I* is not before this court and that reconstruing the limitation would therefore be improper. We agree with Karsten. As this court stated in *Pharmacia*, 170 F.3d at 1380, 50 USPQ2d at 1039, "our role is limited to reviewing the district court's application of collateral estoppel, not the correctness of the [underlying decision]." It is *Vardon II* that is on appeal to this court, not *Vardon I*, and we therefore do not address the *Vardon I* court's claim construction.

■ Finally, on cross-appeal Karsten argues that the *Vardon II* court abused its discretion when it declined to sanction Vardon for bad faith litigation. Karsten sought such sanctions in the form of attorneys fees under Federal Rule of Civil Procedure 54(d)(2)(e), and the court refused to grant them on the ground that the record did not support a finding of bad faith.

*Vardon II Sanctions* at 5. Because it was neither unreasonable nor clearly erroneous for the district court to deny Karsten's motion for sanctions, Karsten's argument lacks merit. *See Abrutyn v. Giovanniello,* 15 F.3d 1048, 1050–51, 29 USPQ2d 1615, 1617 (Fed.Cir.1994) (holding that an abuse of discretion occurs if the decision is clearly unreasonable or is based on erroneous conclusions of law). We therefore affirm.

### CONCLUSION

The *Vardon II* court erred when it concluded that *Vardon I's* grant of partial summary judgment was final for the purposes of collateral estoppel and accorded that interlocutory decision preclusive effect. This court, therefore, reverses *Vardon II's* dismissal of Vardon's complaint and its motion to amend and remands for further proceedings consistent with this Opinion. We decline to reach the claim construction issue and affirm the *Vardon II* court's dismissal of Karsten's motion for sanctions.

### COSTS

Each party shall bear its own costs.

*AFFIRMED–IN–PART, REVERSED–IN–PART, AND REMANDED.*

DYK, Circuit Judge, concurring.

I join the majority's opinion because I agree that we are bound by our decision in *Bayer AG. v. Biovail Corp.*, 279 F.3d 1340, 61 USPQ2d 1675 (Fed.Cir.2002), to apply regional circuit law to res judicata and collateral estoppel issues.[2] I have serious

---

**2.** Footnote 4 of the decision in *Pharmacia & Upjohn Co. v. Mylan Pharmaceuticals, Inc.*, 170 F.3d 1373, 50 USPQ2d 1033 (Fed.Cir. 1999), on which *Bayer* relied, suggested that we should apply regional circuit law on some collateral estoppel issues and not on others. *See id.* at 1381 n. 4 ("Application of *Blonder–Tongue [Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434,

28 L.Ed.2d 788 (1971) ], being an issue of patent law, is a matter within our exclusive jurisdiction and is hence subject to this court's law. However, because the application of general collateral estoppel principles, such as finality of judgment, is not a matter within the exclusive jurisdiction of this court, we must apply the law of the circuit in which the district court here sits . . . .").

doubts, however, as to whether that is the correct result.

Although we apply regional circuit law to purely procedural issues, we apply Federal Circuit law to non-patent issues where "the disposition of nonpatent-law issues is affected by the special circumstances of the patent law setting in which those issues arise." *Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356, 1360, 50 USPQ2d 1672, 1675 (Fed.Cir.1999) (en banc). Such a relationship has been found to exist in a number of areas. For example on personal jurisdiction questions, we have applied our own law, *see Hildebrand v. Steck Mfg. Co.*, 279 F.3d 1351, 1354, 61 USPQ2d 1696, 1698 (Fed.Cir.2002). We do so in order to "promot[e] uniformity in the field of patent law...." *Midwest Indus.*, 175 F.3d at 1360, 50 USPQ2d at 1676. Although the recent decision of the Supreme Court in *Holmes Group, Inc. v. Vornado Air Circulation Systems, Inc.*, — U.S. —, 122 S.Ct. 1889, 153 L.Ed.2d 13 (2002) may make that uniformity more elusive, it is still important.

Res judicata and collateral estoppel questions are affected by and closely related to patent law questions. Moreover, they may be outcome determinative. In this particular case, it is unlikely that there is a variation in the collateral estoppel rules in the various regional circuits. But it is not difficult to imagine other cases in which different res judicata and collateral estoppel rules would be applied depending on the regional circuit forum, and that the existence of these different rules could affect forum selection. Patent litigants often have a wide choice of fora. There is simply no reason why an earlier patent judgment should have one consequence in the Third Circuit and another in the Seventh Circuit, for example. Such an approach encourages the very forum shopping that our regional circuit law approach was designed to prevent. *See Midwest*

*Indus.*, 175 F.3d at 1359, 50 USPQ2d at 1675.

I would apply uniform Federal Circuit law to determine the effect of previous patent litigation.